CANTON COTTON MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28986.   Promulgated June 9, 1932.

*W. A. Sutherland, Esq.*, and *J. R. Sherrod, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

MATTHEWS: The only question to be decided is whether the petitioner is entitled to have its tax liability determined under the pro-

visions of section 210 of the Revenue Act of 1917 and sections 327 and 328 of the Revenue Act of 1918, the pertinent provisions of which are set forth by the footnote.[1]

The petitioner is claiming special assessment upon the grounds (1) that invested capital can not be determined; (2) that capital is abnormal, due to the very valuable trade brand " Canton Denim " and the good will attached to the same, no part of which has been or can be included in invested capital; and (3) that income is abnormal, due to the payment of inadequate salaries and the fact that the Jones Mercantile Company rendered services free of charge.

The record in this case presents a very interesting situation. The petitioner is a denim-manufacturing corporation with its principal place of business and plant in Georgia. The officers of petitioner were men who stood high in the community and who had a reputation for honesty and veracity. As a result of using only the best grade of cotton and of superior workmanship they built up a business with a reputation like their own. The denim which was produced in the petitioner's plant was of an excellent quality. Instead of expending money in advertising the officers expended it in purchasing the best quality of cotton. They used this fact as selling talk and because the product was of the quality that they represented it to be they were able to sell it and to increase their sales from year to year. The denim produced by the petitioner is now considered as good as any in the country. Several witnesses testified that manufacturers of overalls wanted " Canton Denim " and that they had very few complaints on overalls made of this material.

---

[1] [Act 1917.] SEC. 210. That if the Secretary of the Treasury is unable in any case satisfactorily to determine the invested capital, the amount of the deduction shall be the sum of (1) an amount equal to the same proportion of the net income of the trade or business received during the taxable year as the proportion which the average deduction (determined in the same manner as provided in section two hundred and three, without including the $3,000 or $6,000 therein referred to) for the same 'calendar year of representative corporations, partnerships, and individuals, engaged in a like or similar trade or business, bears to the total net income of the trade or business received by such corporations, partnerships, and individuals, plus (2) in the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000.

    \*       \*       \*       \*       \*       \*       \*

[Act 1918.] SEC. 327. That in the following cases the tax shall be determined as provided in section 328:

(a) Where the Commissioner is unable to determine the invested capital as provided in section 326;

    \*       \*       \*       \*       \*       \*       \*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, \* \* \*

The petitioner did not set up on its books any amount representing trade brand or good will and is not seeking to have any amount included in invested capital for these intangibles. Counsel for petitioner argue that the petitioner expended amounts to build up its trade brand and good will which can not be determined, and also that other items of a capital nature had been charged to expense and can not now be determined.

With regard to items of a capital nature being charged to expense, a former revenue agent who had examined the petitioner's books and made a report thereon to the respondent, and Louis L. Jones, secretary of the petitioner, testified in a general way that the costs of certain small items of machinery, of installing machinery, and of excavation work had been charged to expense, and that it was impossible to determine the amounts of such charges. However, the evidence does not show that the charges were substantial in amount or that the costs for labor were erroneously charged to expense. See *Duquesne Steel Foundry Co.*, 15 B. T. A. 467; and *American Gut String Manufacturing Co.*, 19 B. T. A. 608. Counsel for the petitioner in their brief contend that there were other items of a capital nature which did not appear in the invested capital, basing their contention upon the fact that the respondent in determining the basis for depreciation found that the gross reproduction costs as of March 1, 1913, were $639,992.11 and the gross actual cost, less depreciation at that date which was used for invested capital purposes, was $532,445.25. An engineer testified that machinery costs were 25 per cent to 30 per cent lower on March 1, 1913, than at the time the petitioner equipped its mill, and in 1909, when it doubled its capacity. From this counsel argue that the machinery should have stood on the books at approximately 33⅓ per cent more than its March 1, 1913, reproduction costs and then states:

* * * So it is plain that invested capital actually going into physical assets can not be satisfactorily determined within the meaning of section 210 of the Revenue Act of 1917 and section 327(a) of the Revenue Act of 1918. While it is impossible to determine the exact amount by which invested capital was thus understated, it is clear that it must have been understated to the extent of at least 33⅓ to 50 per cent of the cost of the machinery.

This is all the evidence we have on this point. We do not know exactly what the books show or exactly how the respondent arrived at the figures used by him. The evidence is insufficient to show that the machinery account does not represent the full amount of capital invested in it, or that invested capital can not be determined.

As to the good will and trade brand counsel for petitioner argue that since the petitioner did not expend any money for advertising but expended large sums in buying a superior grade of cotton, and

that since we have allowed special assessment in cases such as that of *Northwestern Yeast Co.*, 5 B. T. A. 232, we should allow special assessment in this case. They seek to draw an analogy between the situation herein presented and the one where a taxpayer has expended large amounts for advertising, a part of which contributed to the building up of a capital asset and the amount attributable to capital can not be determined. They contend that the excess, or at least a part thereof, of the cost of petitioner's cotton over that of cotton used by other manufacturers, contributed to building up the petitioner's trade brand and good will and that, since the exact amount so attributable can not be determined, special assessment should be allowed. We can see no merit in this contention. In the *Northwestern Yeast Co.* case, and similar cases, a portion of the amounts expended for advertising in early years was held to be investments in a capital asset. Here the petitioner expended no amounts for advertising, and all of the amounts paid for the high-grade cotton used in the manufacture of the denim sold were a part of the cost of the goods sold. We know of no theory of accounting which would permit the capitalization of any portion of the cost of materials going into goods sold. Since the amounts which the petitioner claims can not be determined were not of a capital nature, it is clear that this is not a situation where section 327(a) is applicable.

The petitioner's next contention is closely connected with the one just discussed. It contends that invested capital is abnormal in that the profits are largely due to the very valuable trade brand " Canton Denim " and the good will attached to the same, no part of which can be included in invested capital, using the same argument that a part of the cost of the cotton was the cost of building up its good will. Several witnesses computed the value of the good will at substantially $1,000,000 by using a formula which has been approved by the respondent and by this Board. We are convinced that the petitioner had built up a valuable good will and trade brand, which had been accomplished by using a superior grade of cotton and skillful workmanship. The reward for this was in the increase of gross sales, which showed that it paid to produce an excellent product, all the cost of which was reflected in the material and workmanship. However, neither this nor the fact that the petitioner had a large income in relation to invested capital results in an abnormal condition such as is contemplated by the statute. Good will in most cases results from the acquisition of a reputation for a good product acquired over a period of years and does not long retain its value if the quality of the product to which it attaches is not maintained. We have held repeatedly that the building up of a good will, the value of which can not be included in invested

capital, does not amount to an abnormality and we can not agree with counsel that the fact that the good will may have been of great value can make any difference. *Enameled Metals Co.*, 14 B. T. A. 1392; and *Gerlach-Barklow Co.*, 16 B. T. A. 201. In the cases where we have allowed special assessment where good will or intangibles were not included in invested capital it has been where they have been acquired for stock and the value could not be determined, or where on account of statutory restrictions they could not be included in invested capital.

The situation is not the same as the one in the case of *Clarence Whitman & Sons, Inc.*, 11 B. T. A. 1192, wherein we said:

* * * It was these intangible assets which were the principal cause of the large income which petitioner enjoyed during the taxable years and on which the deficiencies in question are based. Because of its manner of organization these assets may not be included in the computation of its invested capital. We have held that a taxpayer does not fall within the provisions of sections 327 and 328 merely because assets are used in the business which may not be included in invested capital. *Morris & Co.*, 1 B. T. A. 704. The exclusion must be such as to create an abnormal condition. Where, as here, the asset excluded is the most substantial part of its capital and is the principal contributing factor in the production of taxable income of the petitioner, it is our opinion that such an abnormality exists. *Viscose Co.*, 3 B. T. A. 444; *G. M. Standifer Construction Corporation*, 4 B. T. A. 525; *Pittsburgh & Bessemer Coal Co.*, 5 B. T. A. 45; *Excelsior Motor Manufacturing & Supply Co.*, 5 B. T. A. 582; *J. M. & M. S. Browning Co.*, 6 B. T. A. 914; *Cushman Chuck Co.*, 8 B. T. A. 148.

The principle in the above case is not applicable in a case where the taxpayer has by ordinary good business methods built up a valuable intangible, which is not in any case a part of its statutory invested capital. See *Coca-Cola Bottling Works of Pittsburgh*, 19 B. T. A. 267; and *Raymond Syndicate, Inc.*, 21 B. T. A. 600. We are therefore of the opinion that the petitioner's invested capital is not abnormal due to the fact that the petitioner over a period of nearly twenty years had built up a valuable good will and trade brand.

The petitioner next contends that net income is abnormal in that it received valuable services at one-third of their value and that it received the benefit of the services of the Jones Mercantile Company free. The evidence shows that the salaries paid to its two officers, R. T. Jones and Louis L. Jones, were inadequate, but we are of the opinion that this did not result in an abnormality. See *Eagle Piece Dye Works*, 10 B. T. A. 1360. Neither does the rendering of the services by the Jones Mercantile Company constitute an abnormality. D. D. Summey, engaged in the cotton mercantile business, testified that these services were worth from $3 to $4 per bale. There is no testimony that it is the usual practice of a cotton manufacturing company to obtain its cotton through a broker. We would not consider

it unusual for a cotton mill to purchase its own cotton direct from the growers where, like the petitioner in this case, it is situated in a cotton growing district. A somewhat similar situation was presented in the case of the *Continental Products Co.*, 24 B. T. A. 119. In that case we said:

> While the services rendered to petitioner without charge or at nominal charges, set forth as contentions (1), (3), (5) and (7), may have affected petitioner's income, we are of the opinion that no such abnormality has been established as contemplated by the statute. There can be no doubt that because of such advantageous arrangements and fortunate conditions petitioner's income was greatly increased, but we do not understand that Congress intended to favor corporations merely because they were able to earn a large income, even though it resulted partly from their favorable connections with another corporation.  *  *  *

The petitioner contends that, even if none of the factors above discussed constitutes an abnormality standing alone, the combination is such as to entitle it to relief. However, we have held, in *Everett Logging Co.*, 19 B. T. A. 1098, that the aggregate of a number of conditions, each inadequate in itself to establish an abnormality, does not necessarily constitute a basis for special assessment. To the same effect is *Primrose Tapestry Co.*, 20 B. T. A. 702.

We are, therefore, of the opinion that upon a consideration of all the evidence the petitioner has failed to establish that it is entitled to special assessment and the determination of the respondent in this respect is therefore sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

GOODRICH, dissenting: In my opinion, petitioner has proved abnormalities in its income sufficient to entitle it to special assessment.

TRAMMELL and BLACK agree with this dissent.